IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GULF COAST MARITIME | § | Case No. 17-60217 |
| SUPPLY, INC. | § | |
| | § | |
| Debtor. | § | Chapter 11 |

OBJECTION TO CLAIM OF
<u>THE ALCOHOL AND TOBACCO TAX AND TRADE BUREAU</u>
(Claims No. 8&9)

**THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 21 DAYS AFTER THE OBJECTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID. IF YOU DO NOT FILE A RESPONSE WITHIN 21 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED.**

**A HEARING HAS BEEN SET ON THIS MATTER ON DECEMBER 19, 2018, AT 10:00 A.M. IN COURTROOM 400, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

TO THE HONORABLE CHIEF DAVID R. JONES:

Gulf Coast Maritime Supply, Inc. ("Gulf Coast" or "Debtor") files this Objection ("Objection") to the Proofs of Claim (the "Claim") filed by the Alcohol and Tobacco Tax and Trade Bureau (the "TTB.")

**I.   SUMMARY**

1. TTB alleges that the Debtor owes outstanding tobacco excise taxes ("the Taxes") allegedly assessed pursuant to 26 U.S.C. §§ 5703(a)(2) and 5761(c). The Debtor believes that

TTB's claim is improper because: 1) TTB has deprived Gulf Coast of its due process rights by failing to state "the basis for the tax due" pursuant to 27 C.F.R. § 70.81(a); 2) TTB improperly calculated the Taxes on the receipt of tobacco products instead of on the *removal* of tobacco products as required by statute, 26 U.S.C. § 5703(b)(1); 3) Gulf Coast never improperly diverted Product for domestic use; 4) according to the TTB, after Salem Geller's death, Gulf Coast was operating without a valid permit and, for that reason, it cannot be a "transferee" for excise tax liability under the pertinent statutory framework; and 5) Gulf Coast did not willfully fail to comply with any regulations; and 5) part or all of TTB's claims against the Debtor are barred by the applicable three year statute of limitations in 26 U.S.C. § 6501(a).

2. Ultimately, however, because TTB has failed at all relevant times to identify the factual and legal basis for the assessed taxes, the Debtor is not able to adequately answer TTB's proof of claim. Accordingly, the Debtor requests that the Claim be disallowed in its entirety or, alternatively, that TTB be required to amend the Claim and provide the factual and legal basis for TTB's asserted tobacco excise tax claim.

## II.  PARTIES, JURISDICTION, AND VENUE

3. The Debtor may be served in this contested matter through the undersigned counsel.

4. TTB may be served by mail to the address indicated on its proofs of claim filed in this case: Brian Wissman, Alcohol & Tobacco Tax & Trade Bureau, 550 Main Street, Room 8002, Cincinnati, Ohio 45202. A copy may also be served via mail and ECF service on the attorneys appearing on TTB's behalf in this case: Richard A. Kincheloe, United States Attorney's Office, Southern District of Texas, 1000 Louisiana St., Suite 2300, Houston, Texas 77002 and Ari D. Kunofsky, Trial Attorney, Tax Division, U.S. Department of Justice, P.O. Box 227, Washington, D.C. 20044.

5. This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334. Consideration of this Objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Claim objections are governed by section 502 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 3007 and BLR 3007. Inasmuch as the Trustee is not requesting relief of the kind specified in Bankruptcy Rule 7001, this Objection is a contested matter under Bankruptcy Rule 9014.

### III. BACKGROUND

6. Gulf Coast is the debtor in possession in the underlying chapter 11 bankruptcy case no. 17-60217, which is presently pending before this Court.

7. The Debtor is a subchapter S corporation incorporated in Texas and headquartered in Houston, Texas. The Debtor is owned by Barbara Geller ("Barbara") and her son, Jay Geller ("Jay").

8. The Debtor is in the business of selling duty free and excise tax exempt merchandise as supplies to commercial ships operating on the high seas ("eligible vessels") when they are docked in the Port of Houston. It operates three segregated Government-regulated areas within a 29,000-square-foot facility (the "Facility"), bonded by the TTB and United States Customs and Border Protection ("CBP," and collectively with TTB, the "Government"), at its principal place of business located at 5922 Harvey Wilson Drive, Houston, Texas 77020. The Debtor stores duty-free and excise tax exempt goods in the Facility for delivery as supplies to eligible vessels for consumption beyond the jurisdiction of TTB and the customs territory.

9. The TTB is a bureau under the United States Treasury Department, created in 2003 as part of a reorganization of the revenue functions of Bureau of Alcohol, Tobacco, and Firearms (the "ATF").

10. On December 20, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

11. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as a debtor in possession. No trustee or examiner has been appointed in the case.

**A.     History of Gulf Coast**

12. After World War II, in the late 1940s, Louis Druss ("Mr. Druss") founded what is now Gulf Coast in Galveston, Texas. Mr. Druss, a pharmacist, started helping seamen that came into the port from commercial ships to find specific items that the seamen would request. Mr. Druss found that he was spending more time hunting down the seamen's requested items than he was practicing as a pharmacist so he started the company that would become Gulf Coast as a way to supply commercial ships with items the seamen requested, like soda, candy, and chewing gum, everyday items not available on the ships.

13. Gulf Coast eventually took advantage of U.S. laws that allowed for the duty and excise tax free sale of high excise tax items like cigarettes and liquor and Mr. Druss emerged as a pioneer in the duty and tax-free industry and Gulf Coast cemented its position as a leading wholesale supplier of duty free items to eligible vessels operating in international waters.

14. In the mid-1970s, with Mr. Druss's health failing, his son-in-law, Salem Geller ("Salem[1]"), started working for him. Soon thereafter Salem, together with his wife and the daughter of Mr. Druss, Barbara Druss ("Barbara"), purchased and renamed the company Gulf Coast. In November 1994, Salem and Barbara gave 10% ownership of the company to their son,

---

[1] Due to the possible confusion from multiple parties sharing the same names, first names are used for some parties.

4

Jay Geller, so that Salem and Barbara together owned 90% and Jay Geller owned 10% (Salem and Barbara together owned 900 shares of stock and Jay Geller owned 100). Salem, Barbara, and Jay Geller owned Gulf Coast until Salem's passing in August 2013. Although Salem shared ownership with his wife and his son, Salem was the primary manager of Gulf Coast and neither Barbara nor Jay Geller were nearly as involved in the day-to-day operations of Gulf Coast. When Salem passed away, Barbara and her son, Jay Geller, maintained their ownership in Gulf Coast so that no new owners acquired an interest in Gulf Coast and the ownership of Barbara and Jay Geller approved by TTB continued.

15. As a wholesale supplier of duty free products, including alcohol and tobacco, to commercial ships in international waters, the Debtor is subject to extensive Government regulation. Indeed, pursuant to Government rules and regulations on imports and exports, the Debtor's Facility is separated into four distinct zones, three regulated zones and one unregulated zone: (1) the Tobacco Export Warehouse ("EW"), a bonded warehouse for storing domestic tobacco products excise tax exempt for delivery to eligible vessels as supplies; (2) the Custom Bonded Warehouse ("CBW"), where the Debtor can store dutiable merchandise for up to five years tax-free; (3) the Foreign Trade Zone ("FTZ"), where the Debtor can store imported merchandise duty free and excise tax exempt when admitted in zone-restricted status in which they are deemed exported and without the five-year time limit of the CBW; and (4) a separate zone where the Debtor stores items not subject to duty and excise taxes.

16. The Debtor operates the Facility under various permits from ATF and its successor, TTB. Specifically, ATF issued the Debtor (i) an Alcohol Importer's Basic Permit, effective November 8, 1973; (ii) a Tobacco Export Warehouse Proprietor's Permit, effective November 9, 1973; and (iii) an Alcohol Wholesaler's Basic Permit, also effective in November 1973

(collectively, the "Permits"). Gulf Coast also operates its CBW and FTZ under CBP permission, supervision, and bonds, and such operations are not the subject of dispute.

**B.     The TTB Dispute**

17.     Prior to his passing in 2013, Salem and Barbara each owned 1/2 a community property interest in 90% of Gulf Coast, with their son, Jay, owning the other 10%.  Salem was a Director and the President of Gulf Coast ultimately responsible for compliance with the myriad of complex Government regulations.  Barbara was a Director and the Vice President.  Jay was a Director and an officer.

18.     On March 14, 2016, CBP and TTB initiated an investigation of Gulf Coast's operations.  Following its investigation, the TTB, by letter dated April 14, 2016 (the "Termination Letter"), notified the Debtor that its alcohol and tobacco Permits automatically terminated in September 2013 – 30 days after Salem's passing – for failing to notify TTB of his death and apply for new permits.  Gulf Coast challenged TTB's position that TTB's regulations established a requirement that Gulf Coast notify TTB of the death of an owner absent any other ownership change and that new permit applications were required.

19.     Gulf Coast is a subchapter S corporation which is defined in 26 U.S.C. § 1361(a)(1) for purposes of Title 26, with all the members of a family and their estates treated as a single shareholder pursuant to 26 U.S.C. § 1361(c).

20.     The Termination Letter further stated that the Debtor's continued operation without active permits would result in tax liability, along with civil and criminal penalties.  (Excise taxes on tobacco products are provided for in Chapter 52 of Tile 26 of the United States Code.) Subsequently, in May 2016, TTB issued an "Inquiry Letter" asserting liability for $7,836,787.40 in taxes, penalties, and interest on all cigarettes the Debtor <u>received</u> at its EW for the period of

September 2013 through April 2016, notwithstanding that all cigarettes withdrawn from the warehouse during the relevant period had been laden as tax-exempt supplies on eligible vessels or transferred, as allowed, to Gulf Coast's FTZ or a third party EW.  By statute, TTB is required to determine tobacco excise taxes applicable at the time of their removal from an EW.  26 U.S.C. § 5703(b)(1).  At the time of removal from Gulf Coast's EW, all tobacco products were exempt from excise taxes.  Gulf Coast removed tobacco products for transfer to its FTZ where they were "deemed exported" and nontaxable when admitted in zone-restricted status; it transferred tobacco products to other EW's relieving itself of liability for excise taxes, and it removed tobacco products for delivery as supplies for eligible vessels under the exemption from excise taxes provided by Congress in 19 U.S.C. §§ 1309 and 1317.  By letter of July 14, 2016, Gulf Coast, through counsel, objected to the dearth of facts in the Inquiry Letter to support the asserted liability and requested a formal appeal conference.

21.     On July 15, 2016, the Debtor filed suit in the United States District Court for the District of Columbia seeking declaratory and injunctive relief against the United States of America, and TTB to hold unlawful and set aside TTB's decision that the Debtor's Permits had terminated following Salem Gellers death.[2]  On October 25, 2016 the District Court found that the requested relief could affect Gulf Coast's tax liability and was thus subject to the Anti-Injunction Act prohibition against restrain of the assessment or collection of any tax which deprived the district court of jurisdiction to hear the Debtor's case. This decision was upheld by the United States Court of Appeals for the District of Columbia on August 11, 2017.

22.     On or about January 18, 2017 ("January 18, 2017 Notice"), Gulf Coast received a Notice and Demand asserting without detail Gulf Coast's liability for $8,023,671.36 in excise

---

[2] The case is styled *Gulf Coast Maritime Supply Inc. v. United States of America, et. al,* Civil Action No. 16-1461 in the United States District Court for the District of Columbia.

taxes, penalties, and interest. Gulf Coast, through counsel, again challenged the January 18, 2017 Notice as being deficient in its statement of facts and law on which the asserted liability was based and engaged in significant dialogue with TTB and its counsel, including a telephonic conference on March 23, 2017 (the "March 23, 2017 Conference Call"), seeking to understand TTB's theory of liability that fit any actual set of facts. TTB then issued a Corrected Notice and Demand dated April 5, 2017 (the "April 5, 2017 Notice," together, the "TTB Notices") asserting a demand for $8,349,485.20 calculated including receipts during an expanded period from March 1, 2013 to August 31, 2013, a period preceding Salem Geller's death. The Debtor once again challenged the TTB Notices as defective for failing to state a proper factual and legal basis for the demand as required by 27 C.F.R. § 70.81(a).

23.     On or about December 11, 2017, the Debtor received a Notice of Federal Tax Lien (the "Lien") from TTB in the amount of $8,639,568.48, which apparently was also sent to the Debtor's bank, Prosperity Bank. As a result, the Debtor filed this Chapter 11 Case to give the Debtor necessary breathing room from TTB's Lien in order to effectively reorganize and create a plan to provide for the fair and equitable distribution to its creditors.

24.     On June 8, 2018, TTB superseded every prior Notice and Demand, including the Notice and Demand on which its Lien was predicated, by issuing yet another "Corrected Final Notice and Demand" asserting a tobacco excise tax liability different from TTB's prior calculated amounts and abandoning claims against the March-August 2013 period.

25.     On June 15, 2018, TTB filed Proof of Claim #8 in this Bankruptcy Case asserting a claim for $8,331,931.95.[3] As with the TTB Notices, the Proof of Claim fails to set forth the factual or legal basis for the claim.

---

[3] On June 18, 2018, the Clerk recorded a duplicate copy of TTB's at Claim #9. Claim #9 appears to be an exact duplicate of Claim #8 and, upon information and belief, was docketed in error.

## IV.     OBJECTION

26.     Commencing with TTB's investigation in March 2016, the Debtor, through counsel, and TTB have engaged in extensive dialogue regarding the Debtor's operations and resulting alleged tax liability.  Throughout this process TTB has informally taken a variety of shifting and often contradictory positions to justify the crippling tobacco excise tax liability asserted against the Debtor.  For example:

- Prior to the March 23, 2017 Conference Call, TTB represented that the Debtor was liable for tobacco excise taxes because its tobacco export warehouse received untaxpaid cigarettes while the Debtor lacked a valid export permit in which case, by law, liability for tobacco excise taxes could not transfer to Gulf Coast and would remain with the manufacturer.  See 26 U.S.C. § 5703(a)(2) and 27 C.F.R. § 44.65.

- In a separate Notice of Violations dated July 5, 2016, TTB asserted additional inconsistent theories of liability based on, among other claims, (a) the number of untaxpaid cigarettes received while the Debtor supposedly lacked a valid tobacco export warehouse permit, and (b) withdrawals of untaxpaid cigarettes from the warehouse for delivery to eligible vessels as supplies of consumption on the high seas pursuant to intermediate sales to ship chandlers.  Such intermediate sales to ship chandlers are permitted by law.  *See* CBP Headquarters Ruling Letter H284061 (August 16, 2017), available at https://rulings.cbp.gov/search?term=h284061&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1 , last accessed November 20, 2018.

- Then, during the March 23, 2017 Conference Call, TTB orally advised counsel for the Debtor that TTB's then theory of liability was other than previously expressed. (TTB

9

advised that its new theory would be set forth in a subsequent notice but did not follow through.)

- On April 29, 2017, TTB issued an Annual Notice stating that the Debtor owed excise taxes in the amount $654,465.34 – an amount far lower than the amount asserted in TTB's April 5, 2017 Notice.

27. While TTB has posited many theories in various correspondence and oral communications, TTB has not, against its own regulations, stated any factual or legal basis for its claims in the TTB Notices or the Proof of Claim. Without such a statement of facts and law, including a calculation of liability, the Debtor cannot not specifically answer TTB's Proof of Claim. The Debtor, however, denies that the taxes are owed generally.

28. Debtor also asserts a statute of limitations defense against part or all of TTB's claims. TTB is barred by 26 U.S.C. 6501(a) from making an assessment more than three years after the filing of a return. Gulf Coast's monthly reports of EW withdrawals of tobacco products are returns within the meaning of 26 U.S.C. 6103(b) and the test to determine a return established by the Tax Court in *Beard v. Commissioner of Internal Revenue*, 82 T.C. 766, 777 (U.S. Tax Ct. 1984). By statute and by regulation, TTB is precluded from making an assessment before granting a formal appeal conference when requested by a taxpayer. *See* 26 U.S.C. § 5703(d) and 27 C.F.R. § 41.60 and 26 C.F.R. §§ 601.521-601.527 and 26 C.F.R. § 13.81. TTB has never granted Gulf Coast its requested formal appeal conference. Moreover, while TTB kept changing the amount of excise tax, penalty and interest liability against Gulf Coast, TTB identified the same October 24, 2016 dates of its assessment stated in its original calculation. These assessment dates identified cannot be accurate when TTB keeps changing its assessment with every notice and the assessments are procedurally invalid for failure to accord Gulf Coast its requested formal appeal conference.

Where, as here, the statutory scheme and implementing regulations provide for written and oral presentations, a meeting face to face with an opportunity to present evidence is required following a receipt of a proper notice of claim. *See, e.g., United States v Aegis Security Insurance Company*, 301 F.Supp.3d 1359, 1368-71, 2018 WL 1472326 (Ct. Int'l Trade March 26, 2018) (finding grounds for dismissal of agency claims for failure to exhaust administrative remedies when CBP denied a face-to-face meeting in a proceeding to collect a civil penalty.).

29. For these reasons, the Debtor objects to TTB's proof of claim and asks that such be disallowed in its entirety. In the alternative, the Debtor requests that this Court require TTB to amend its claim and specifically set for the facts and legal basis for the alleged tobacco excise tax liability against the Debtor.

### V.   RESERVATION OF RIGHTS[4]

30. The Debtor reserves the right to respond further to the Claim on any and all additional factual or legal grounds. Without limiting the foregoing, the Debtor specifically reserves its rights to amend this Objection, file additional papers in support of this Objection, file a subsequent response, respond to any allegation or defense that may be raised in response to the Response, and further respond based on any additional information that may be provided to the Debtor.

### VI.   PRAYER

31. Gulf Coast respectfully requests of this Court the following:

---

[4] Given the dearth of factual or legal support provided by TTB to date, the Debtor is not including a supporting affidavit at this time. To the extent that TTB responds and/or provides additional factual detail, then the Debtor can (if necessary) provide such evidence as appropriate to support any disputed factual allegations that may be raised.

    a)    Deny TTB's proof of claim; or alternatively, require TTB to amend its proof of claim and state a specific legal and factual basis for its claim, including the details of the calculation of such claim and,

    b)    Grant Gulf Coast such other and further relief as the Court may deem just and proper.

Respectfully submitted on November 21, 2018.

**OKIN ADAMS LLP**

By:     /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
David L. Curry
Texas Bar No. 24065107
Email: dcurry@okinadams.com
Ryan A. O'Connor
State Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St. Suite 201
Houston, TX 77002
Tel: (713) 228-4100
Fax: (888) 865-2118

**ATTORNEYS FOR THE DEBTOR**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2018 a true and correct copy of the foregoing pleading was served electronically via the Court's EM/ECF electronic system to all parties consenting to service through same, and by United States Mail to the parties on the attached service list.

    */s/ Matthew S. Okin*
    Matthew S. Okin